**DIMOCK v. CORWIN, Collector of Internal Revenue.***

**CORWIN, Collector of Internal Revenue, v. DIMOCK.**

No. 69.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

‘Writ of certiorari granted 59 S.Ct. 357, 83 L.Ed. ——.

Hawkins, Delafield & Longfellow, of New York City (E. J. Dimock, C. O. Donahue, and J. D. Rawlings, all of New York City, of counsel), for plaintiff.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (James W. Morris, Asst. Atty. Gen., Sewall Key, Clarence D. Dawson, and J. L. Monarch, Sp. Assts. to Atty. Gen., and Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y. of counsel), for collector.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This action was commenced by the widow of Henry C. Folger who was the executrix of his estate. He died June 11, 1930 and she died February 21, 1936. The present appellant is executor of her estate and substituted executor of the estate of Henry C. Folger, and now maintains this action to recover federal estate taxes paid under protest.

On the plaintiff's appeal, the question presented is whether there should be included in the gross estate, (1) the whole value of the property held in joint tenancy instead of but one-half; (2) stocks contributed by the survivor of the joint tenancy. On the defendant's appeal, there is raised the sufficiency of the defense as to the claim of exemption from federal estate tax of the excess over one-half of the estate of the decedent which went to charity.

Before May 29, 1912, Folger gave to his wife 251 shares, and prior to March 10, 1914, 656½ shares of stock of different oil corporations. These shares were registered in her name on the books of each corporation. On February 9, 1916, she transferred into their joint names 250 shares of the first 251 shares of stock. She later transferred into their joint names one-half of the 656½ shares of stock and, on February 24, 1916, she transferred the remainder of these shares to their joint names. At the time of his death, the stock in their joint names was valued at $846,772.15.

On April 17, 1914, Mr. Folger had begun establishing joint accounts in the stocks of various oil companies which he did either by transferring shares to the joint names of himself and his wife, or by purchasing shares which he directed to be registered in their names. By September 9, 1916, the effective date of the first federal estate tax act, 39 Stat. 756, shares of stock had been placed in their joint names (including the shares contributed by Mrs. Folger as referred to) which had a value as of the date of his death of $3,607,019.19.

The Commissioner of Internal Revenue determined that, for the purpose of assessment, the federal estate tax of Mr. Folger should include this sum of $3,607,019.19 instead, as claimed by the plaintiff, a deduction of the sum of $1,803,509.59 representing the value of one-half of the shares held in joint tenancy. It is contended that at least the $846,772.15 representing the value of the shares contributed by Mrs. Folger should be deducted. The tax was paid and a refund refused.

Section 302(e) of the Revenue Act of 1926, ch. 27, 44 Stat. 9, 70, 26 U.S.C.A. § 411(e), which was in effect in June, 1930, when Folger died, provides that there shall be included in the gross estate of the decedent, the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, except such part thereof as may be shown to have originally belonged to such other person, and never to have been received or acquired by the latter from the decedent for less than an adequate or full consideration in money or money's worth. This joint tenancy was created in September, 1916, and no consideration in money or money's worth was paid by Folger's wife for any of the stock in such joint tenancy.

Plaintiff argues that this statute would be unconstitutional if applied to tax the entire estate. A statute may be retroactive and valid if it deals with transactions closed after, but initiated before, its enactment. In the instant case, Congress intended to make taxable all transfers made before or after the enactment effective when the transfer took place. The argument of the plaintiff is that the statute is in contravention of the Fifth Amendment, U.S.C.A. Const. Amend. 5, in that it taxes an interest of the survivor of the tenancy vested before the statute was passed.

Knox v. McElligott, 258 U.S. 546, 42 S.Ct. 396, 66 L.Ed. 760, involved a joint estate created in 1912 and the question was whether the whole value should be included in the gross estate of a decedent who died while the 1916 act was in effect. The 1916

Act differed from § 302(h) of the Revenue Act of 1926, 26 U.S.C.A. § 302(h) in that the latter declared it the purpose of Congress to reach all joint estates, including those created before the statute. In the Knox Case, the tax was resisted upon the grounds (a) that Congress did not intend to apply the statute to joint estates created before the enactment, and (b) that the statute was void if it reached the survivor's half of the joint estate. The Supreme Court decided that Congress did not intend that the statute should apply to joint estates created before its enactment. There was, therefore, no occasion to consider whether any event which occurred at death would have justified the tax if Congress had attempted to reach the entire joint estate. As to this decision so limited, see Griswold v. Helvering, Com'r, 290 U.S. 56, 54 S.Ct. 5, 78 L.Ed. 166, and Cahn v. United States, 297 U.S. 691, 56 S.Ct. 384, 80 L.Ed. 985. Tyler v. United States, 281 U.S. 497, 50 S. Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758, involved an estate by the entirety. Upon the death of the husband, who had initiated during his life-time a transaction which resulted after his death in the surviving spouse owning free and clear the whole property, the court held that while there was not a transfer in the strict sense of the word, it was nevertheless true that the decedent's death "brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result." [Page 359.] A tax on the whole value of the estate by the entirety was sustained. The same reasoning we think applies to joint estates where the purpose to tax joint estates, irrespective of the time of their creation, has been made clear. The Supreme Court has not doubted the power of Congress to reach by taxation the entire estate. Gwinn v. Com'r, 287 U.S. 224, 53 S.Ct. 157, 77 L.Ed. 270; Foster v. Com'r, 303 U.S. 618, 58 S.Ct. 525, 82 L.Ed. 1083. If an event occurs at death which justifies a tax upon the whole value of the joint estate created after the statute, the same event will justify a tax upon the whole value of a joint estate created before the statute. Section 302(h) of the 1926 Act, 26 U.S.C.A. § 411(h), clearly indicates such a Congressional purpose to tax the whole value in every instance. Since the Tyler Case, the Supreme Court has been consistent in so ruling. Foster v. Com'r, supra; Gwinn v. Com'r, supra. Congress has such power to legislate and require the inclusion of the whole value because the death of a joint tenant results in such a shifting of economic benefits in the entire property as to make appropriate a tax on that result measured by the value of the entire property. Therefore it is not material that the joint tenancy was created prior to the first federal estate tax of 1916. Tyler v. Com'r, supra; Helvering v. Bowers, 303 U.S. 618, 58 S.Ct. 525, 82 L.Ed. 1083.

Joint tenancies at common law and tenancies by the entirety have one marked similarity—it is the incident of the right of survivorship. Such right is the immediate consequence of the peculiar mode in which joint tenants are seized, that is, of the whole jointly but of nothing separately. The difference between the two classes of tenancies is the right which exists in a joint tenant, and not in a tenant by the entirety, to sever the tenancy by his sole act as an inter vivos transaction, and thus destroy the right of survivorship. Unless a joint tenancy be severed during the lives of the joint tenants, the right of survivorship persists, and upon the death of one of the joint tenants, the survivor takes the whole estate. Neither joint tenant can dispose of any interest in the property by will and defeat the right of survivorship of the whole. The distinction between these tenancies is deemed unimportant in the application of a taxing statute. Com'r v. Emery, 7 Cir., 62 F.2d 591; O'Shaughnessy v. Com'r, 6 Cir., 60 F.2d 235.

In the instant case, before the death of the decedent, the surviving tenant had the right to possess and use the whole property. So too did her husband. Upon the death of the decedent and because of it, Mrs. Folger became entitled to the exclusive possession, use and enjoyment of the whole property and entitled to hold it as her own. Then she acquired the power of disposing of the property by will. Until the death of her husband, the complete ownership had not passed as to any part of the property. It therefore was neither arbitrary nor capricious to include the entire value of the property in the decedent's estate and there was no constitutional objection. Tyler v. Com'r, supra; Helvering v. Bowers, supra; Foster v. Com'r, supra; Sheets v. Com'r, 8 Cir., 95 F.2d 727. As stated in the Tyler Case, § 302(e) of the 1926 Act, 26 U.S.C.A. § 411(e), was enacted to prevent an avoidance of an estate tax.

It was a part of the general scheme of taxation.

■ Plaintiff argues that § 302(e) which "except(s) such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth" prevents including the value of the property which belonged to Mrs. Folger just before the creation of the joint estate. If the acquisition was for less than an adequate and full consideration in money or money's worth and occurred before the enactment of the first federal estate tax act, it must be included. Congress has placed this tax on all joint estates because they accomplish the result of transferring the decedent's property to the surviving spouse. But Congress has excluded any portion of the property which does not represent such a transfer. Upon the husband's death, every part of the joint estate which first belonged to him becomes the sole property of the widow and the test for determining the property excluded is whether it ever belonged to the decedent. If it did and was parted with for less than an adequate consideration, it is not to be excluded. Congress has provided that all such transactions be included without causing an inquiry in each case, whether the particular gift was designedly made to evade the tax.

■ Mr. Folger devised and bequeathed legacies to his sisters, brothers, nephews and nieces and the remainder in trust for the erection and maintenance of the Folger Shakespere Memorial Library at Washington and for the payment of specific sums to his wife, his brother and sisters, his wife's brothers, his nieces and nephews and his wife's nieces and nephews during their lives. Upon the death of Mr. Folger, all persons who under the intestate laws of New York would be entitled to a share in his estate, executed written waivers of any objection to his will which they may have had under § 17 of the Decedent's Estate Law of New York, Consol.Laws, ch. 13, art. 2, § 17. These waivers were dated ten days after Mr. Folger's death and were embodied in waivers of the issue and service of citations upon the probate of his will. The gross estate was appraised at $15,359,827.69 and after deductions of $10,-468,108.70 there was a fixed net estate of $4,891,646.99. Included in these deductions was the sum of $6,396,898 on account of decedent's bequests to charity. Defendant contends that the Commissioner erred in allowing as a deduction so much of the amount bequeathed to charity as exceeded one-half of the decedent's gross estate less his debts and that since the tax on such amount exceeds the tax sought to be recovered, the plaintiff cannot succeed. The argument is that the gifts to charity in excess of one-half of the gross estate less the debts may not be allowed as a deduction under § 303(a) (3) of the Revenue Act of 1926, 44 Stat. 9, 72, 26 U.S.C.A. § 412, because the charity takes such excess through the charitable intent of the widow and the gift is therefore in effect one from the widow and not from the decedent; also that gifts to the extent of such excess may not be allowed as a deduction under § 303 (a), (3), 26 U.S.C.A. § 412, because the amount of such gifts cannot be ascertained as of the date of the decedent's death.

It is agreed that the bequests were charitable within § 303(a) (3). Therefore to warrant the deduction allowed by statute, it is sufficient to show that the charity took the gift by bequest, legacy, devise or transfer from the decedent. In re De Lamar's Estate, 203 App.Div. 638, 197 N.Y.S. 301, affirmed 236 N.Y. 604, 142 N.E. 301. The excess did not pass to Mrs. Folger and it is not explained how the gift could be from the widow without this having taken place. In Humphrey v. Millard, 2 Cir., 79 F.2d 107, 108, where the government sought to tax the excess of a gift to charity over one-half of the decedent's estate where the widow had waived her rights under section 17 of the Decedent's Estate Law, we said that "until and unless the widow exercised her statutory right to defeat partially the tax-exempt testamentary disposition of the residuary estate which her husband had made, his will was effective as to all of it. This right was in the nature of a power which could be renounced. Her waiver of it was unnecessary to make the will valid." We held that the will having been probated, it was valid and disposed of the residuary estate as of the date of the death of the decedent in a manner exempt from federal estate taxation under § 403(a) (3) of the Revenue Act of 1921, 42 Stat. 279. See Mead v. Welch, 9 Cir., 95 F.2d 617. The gift to charity in excess of one-half the estate was valid. It did not pass to Mrs. Folger but passed under Mr. Folger's will to the charity named therein and therefore falls within the terms of § 303(a) (3) and

was properly allowed as a deduction. Here the estate which had vested in charity was not divested at all but simply was more firmly vested in charity by the waivers of the widow and next of kin.

Decree affirmed.